MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

GUSTAVO A. PENATE, JOSE SANTIAGO
SANTIAGO, MIGUEL ANGEL PLACIDO
BAZAN, and RODOLFO MACEDA
MARTINEZ, *individually and on behalf of*
*others similarly situated,*

                         *Plaintiffs*,

       -against-

DBTG CHAMBERS LLC  (D/B/A DIRTY
BIRD TO GO) and JOSEPH CIRIELLO ,

                    *Defendants.*

--------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

Plaintiffs Gustavo A. Penate, Jose Santiago Santiago, Miguel Angel Placido Bazan, and

Rodolfo Maceda Martinez, individually and on behalf of others similarly situated (collectively,

"Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their

knowledge and belief, and as against DBTG Chambers LLC (d/b/a Dirty Bird to Go), ("Defendant

Corporation") and Joseph Ciriello, ("Individual Defendant"), (collectively, "Defendants"), allege

as follows:

### NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants DBTG Chambers LLC (d/b/a Dirty

Bird to Go) and Joseph Ciriello.

2.      Defendants own, operate, or control two fried chicken restaurants, one located at 155

Chambers Street, New York, NY 10007 and the other at 204 W. 14th Street, New York, NY 10011.

3.      Upon information and belief, individual Defendant Joseph Ciriello, serve or served as owner, manager, principal, or agent of Defendant Corporation and, through this corporate entity, operates or operated the 155 Chambers Street, New York, NY 10007 and the 204 W. 14th Street, New York, NY 10011 locations as a joint or unified enterprise.

4.      Plaintiffs were employed as delivery workers at the 155 Chambers Street, New York, NY 10007 and 204 W. 14th Street, New York, NY 10011 locations.

5.      Plaintiffs were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties up until approximately July of 2017. Their daily non-tipped duties included but was not limited to dishwashing, mopping, sweeping, taking out trash, carrying down and stocking delivered items in the basement, bringing up food and ingredients from the basement for the cooks, cleaning the cooks work area, cleaning tables, cleaning the kitchen, preparing seasonings and sauces for the cooks and cutting vegetables (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage compensation for the hours that they worked.

7.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

8.      Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

9.      Regardless, at all relevant times, Defendants paid Plaintiffs at the lowered tip-credited rate.

10.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

11.     Upon information and belief, Defendants employed the policy and practice of

disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the tip-credit rate.

12.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

13.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage compensation required by federal and state law and regulations.

14.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

15.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

17.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate two fried chicken restaurants located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

18.     Plaintiff Gustavo A. Penate ("Plaintiff Penate" or "Mr. Penate") is an adult individual residing in Queens County, New York.

19.     Plaintiff Penate was employed by Defendants at both Dirty Bird to Go locations from approximately August 19, 2016 until on or about the end of January 2018 and from approximately April 2018 until on or about July 7, 2019.

20.     Plaintiff Jose Santiago Santiago ("Plaintiff Santiago" or "Mr. Santiago") is an adult individual residing in Bronx County, New York.

21.     Plaintiff Santiago was employed by Defendants at Dirty Bird to Go from approximately May 25, 2015 until on or about July 7, 2019.

22.     Plaintiff Miguel Angel Placido Bazan ("Plaintiff Placido" or "Mr. Placido") is an adult individual residing in Queens County, New York.

23.     Plaintiff Placido was employed by Defendants at Dirty Bird to Go from approximately August 2015 until on or about July 16, 2016 and from Approximately August 16, 2016 until on or about July 5, 2019.

24.     Plaintiff Rodolfo Maceda Martinez ("Plaintiff Maceda" or "Mr. Maceda") is an adult individual residing in Queens County, New York.

25.     Plaintiff Maceda was employed by Defendants at Dirty Bird to Go from approximately September 26, 2013 until on or about June 10, 2014 and from December 31, 2014 until on or about July 5, 2019.

*Defendants*

26.     At all relevant times, Defendants owned, operated, or controlled two fried chicken restaurants, one is located at 155 Chambers Street, New York, NY 10007 and the other is located at 204 W. 14th Street, New York, NY 10011.

27. Upon information and belief, DBTG Chambers LLC (d/b/a Dirty Bird to Go) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 155 Chambers Street, New York, New York 10007.

28. Defendant Joseph Ciriello is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Joseph Ciriello is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Joseph Ciriello possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

*Defendants Constitute Joint Employers*

29. Defendants operate two fried chicken restaurants located in two neighborhoods in Manhattan.

30. Individual Defendant, Joseph Ciriello, possesses operational control over Defendant Corporation, possesses ownership interests in Defendant Corporation, and controls significant functions of Defendant Corporation.

31. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

32. Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

33.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

34.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

35.     Upon information and belief, Individual Defendant Joseph Ciriello operates Defendant Corporation as either an alter ego of himself and/or fails to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

a)   failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)   defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)   transferring assets and debts freely as between all Defendants,

d)   operating Defendant Corporation for his own benefit as the sole or majority shareholder,

e)   operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed Corporation,

f)   intermingling assets and debts of his own with Defendant Corporation,

g)   diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

h)   Other actions evincing a failure to adhere to the corporate form.

36.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled

the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

37.     In each year from 2013 to 2017, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

38.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the two fried chicken restaurants on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

39.     Plaintiffs are former employees of Defendants who ostensibly were employed as delivery workers . However, they spent over 20% of each shift performing the non-tipped duties described above.

40.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Gustavo A. Penate*

41.     Plaintiff Penate was employed by Defendants from approximately August 19, 2016 until on or about the end of January 2018, and from approximately April 2018 until on or about July 7, 2019.

42.     Defendants ostensibly employed Plaintiff Penate as a delivery worker.

43.     However, Plaintiff Penate was also required to spend a significant portion of his work day performing the non-tipped duties described above up until approximately July of 2017.

44.     Although Plaintiff Penate ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work up until approximately July of 2017.

45.     Plaintiff Penate regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

46.    Plaintiff Penate's work duties required neither discretion nor independent judgment.

47.    From approximately August 19, 2016 until on or about December 2016, Plaintiff Penate worked at both locations from approximately 5:00 p.m. until on or about 10:30 p.m., Monday through Fridays and from approximately 11:00 a.m. until on or about 10:30 p.m., Sundays (typically 39 hours per week).

48.    From approximately January 2017 until on or about July 2017, Plaintiff Penate worked at both locations from approximately 10:30 a.m. until on or about 4:00 p.m., Mondays, Wednesdays, and Thursdays and from approximately 10:30 a.m. until on or about 10:30 p.m., Tuesdays, Fridays, and Saturdays (typically 52.5 hours per week).

49.    Throughout his employment, Defendants paid Plaintiff Penate his wages by check.

50.    From approximately August 19, 2016 until on or about December 2016, Defendants paid Plaintiff Penate $7.50 per hour.

51.    From approximately January 2017 until on or about July 2017, Defendants paid Plaintiff Penate $9.15 per hour for the first 40 hours and $14.65 per hour for the overtime hours.

52.    Defendants required Plaintiff Penate to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

53.    On a number of occasions, Defendants required Plaintiff Penate to sign a document, the contents of which he was not allowed to review in detail.

54.    Defendants required Plaintiff Penate to purchase "tools of the trade" with his own funds—including a Helmet, a vest, bicycle lights, and a bicycle.

*Plaintiff Jose Santiago Santiago*

55.    Plaintiff Santiago was employed by Defendants from approximately May 25, 2015 until on or about July 7, 2019.

56.    Defendants ostensibly employed Plaintiff Santiago as a delivery worker.

57.    However, Plaintiff Santiago was also required to spend a significant portion of his work day performing the non-tipped duties described above up until approximately July of 2017.

58.    Although Plaintiff Santiago ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work up until approximately July of 2017.

59.    Plaintiff Santiago regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

60.    Plaintiff Santiago's work duties required neither discretion nor independent judgment.

61.    From approximately May 25, 2015 until on or about July 2017, Plaintiff Santiago worked from approximately 5:00 p.m. until on or about 10:00 p.m., two days a week and from approximately 4:00 p.m. until on or about 10:30 p.m. three days a week (typically 29.5 hours per week).

62.    Throughout his employment, Defendants paid Plaintiff Santiago his wages by check.

63.    From approximately May 25, 2015 until on or about December 2015, Defendants paid Plaintiff Santiago $7.00 per hour.

64.    From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Santiago $7.50 per hour.

65.    From approximately January 2017 until on or about July 2017, Defendants paid Plaintiff Santiago $9.15 per hour.

66.    On a number of occasions, Defendants required Plaintiff Santiago to sign a document, the contents of which he was not allowed to review in detail.

67.    Defendants required Plaintiff Santiago to purchase "tools of the trade" with his own funds—including a helmet, a vest, and a bicycle.

*Plaintiff Miguel Angel Placido Bazan*

68.     Plaintiff Placido was employed by Defendants from approximately August 2015 until on or about July 2016 and from approximately August 2016 until on or about July 5, 2019.

69.     Defendants ostensibly employed Plaintiff Placido as a delivery worker.

70.     However, Plaintiff Placido was also required to spend a significant portion of his work day performing the non-tipped duties described above up until approximately July of 2017.

71.     Although Plaintiff Placido ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work up until approximately July of 2017.

72.     Plaintiff Placido regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

73.     Plaintiff Placido's work duties required neither discretion nor independent judgment.

74.     From approximately August 2015 until on or about July 2016, Plaintiff Placido worked from approximately 11:00 a.m. until on or about 11:00 p.m., Saturdays and Sundays (typically 24 hours per week).

75.     From approximately August 2016 until on or about July 2017, Plaintiff Placido worked from approximately 4:00 p.m. until on or about 10:30 p.m., Mondays through Fridays and from approximately 11:00 a.m. until on or about 10:00 p.m., on Sundays (typically 43.5 hours per week hours per week).

76.     Throughout his employment, Defendants paid Plaintiff Placido his wages by check.

77.     From approximately 2015 until on or about 2016, Defendants paid Plaintiff Placido $5.75 per hour.

78.     During 2017, Defendants paid Plaintiff Placido $8.25 per hour.

79.     Although Plaintiff Placido was required to keep track of his time, Defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Placido was not compensated for all of the hours that he worked.

80.    Defendants required Plaintiff Placido to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

81.    On a number of occasions, Defendants required Plaintiff Placido to sign a document, the contents of which he was not allowed to review in detail.

82.    Defendants required Plaintiff Placido to purchase "tools of the trade" with his own funds—including 2 bicycles, 1 helmet, and monthly bicycle maintenance.

*Plaintiff Rodolfo Maceda Martinez*

83.    Plaintiff Maceda was employed by Defendants from approximately September 26, 2013 until on or about June 10, 2014 and from approximately December 31, 2014 until on or about July 5, 2019.

84.    Defendants ostensibly employed Plaintiff Maceda as a delivery worker.

85.    However, Plaintiff Maceda was also required to spend a significant portion of his work day performing the non-tipped duties described above up until approximately July of 2017.

86.    Although Plaintiff Maceda ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work up until approximately July of 2017.

87.    Plaintiff Maceda regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

88.    Plaintiff Maceda's work duties required neither discretion nor independent judgment.

89.    From approximately September 2013 until on or about June 10, 2014, Plaintiff Maceda worked from approximately 10:00 a.m. until on or about 4:00 p.m., Mondays through Fridays (typically 30 hours per week).

90.    From approximately January 2015 until on or about December 2016, Plaintiff Maceda worked from approximately 9:45 a.m. until on or about 10:30 p.m., Mondays through Wednesdays and from approximately 9:45 a.m. until on or about 4:00 p.m., Thursdays and Fridays (typically 49.6 hours per week).

91.     From approximately January 2017 until on or about July 2017 Plaintiff Maceda worked from approximately Monday through Friday from approximately 11:00 a.m. until on or about 4:00 p.m. (typically 25 hours per week).

92.     Throughout his employment, Defendants paid Plaintiff Maceda his wages by check.

93.     From approximately 2013 until on or about May 2015, Defendants paid Plaintiff Maceda $5.65 per hour for the first 40 hours and $10.02 for the overtime hours.

94.     From approximately May 2015 until on or about December 2015, Defendants paid Plaintiff Maceda $7.00 per hour for the first 40 hours and $11.37 for the overtime hours.

95.     From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Maceda $7.50 per hour for the first 40 hours and $12.00 for the overtime hours.

96.     From approximately January 2017 until on or about July 2017, Defendants paid Plaintiff Maceda $9.15 per hour for the first 40 hours.

97.     Defendants required Plaintiff Maceda to purchase "tools of the trade" with his own funds—including bicycles, helmets, lights and bicycle maintenance.

*Defendants' General Employment Practices*

98.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage as required by federal and state laws.

99.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

100.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

101.    Defendants required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

102.    Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

103.    Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

104.    Plaintiffs and all other tipped workers were paid at the lowered tip-credit rate by Defendants.

105.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

106.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

107.    In violation of federal and state law as codified above, Defendants classified Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was at the lowered tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

108.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

109.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

## FLSA COLLECTIVE ACTION CLAIMS

110.    Plaintiffs bring their FLSA minimum wage, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

111.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage.

112.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

113.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

114.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

115.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

116.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

117.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

118.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

119.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

120.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

121.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

122.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

123.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

124.    Plaintiffs were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

125.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

126.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

127.    Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(d)    Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(e)    Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(f)    Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(g)    Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(h)    Awarding Plaintiffs damages for the amount of unpaid minimum wage and for any

improper deductions or credits taken against wages;

(i)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(j)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(k)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(l)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(m)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.


Dated:  New York, New York
September 20, 2019

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:        /s/ Michael Faillace
          Michael Faillace [MF-8436]
          60 East 42nd Street, Suite 4510
          New York, New York 10165
          Telephone: (212) 317-1200
          Facsimile: (212) 317-1620
          *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 8, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Gustavo A. Penate

Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                          8 de julio 2019

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

————————

Faillace@employmentcompliance.com

May 13, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:             Jose Santiago Santiago

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:              8 de Julio 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 8, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Miguel Angel Placido Bazan

Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           8 de Julio del 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

July 8, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Maceda  Martinez  Rodolfo

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:        _____

Date / Fecha:                        8 de julio 2019