# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E. 42nd Street, Suite 4510　　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 317-1200
New York, New York 10165　　　　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 317-1620
_____

January 3, 2021

**VIA ECF**
Honorable Valerie E. Caproni, U.S.D.J.
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

Re:　Penate et al v. DBTG Chambers LLC et al, 1:19-cv-08767-VEC

Your Honor:

　　　This office represents the Plaintiffs in the above referenced matter. Plaintiffs write, jointly with Defendants as to Section I below, to submit this letter setting forth our views on why the Court should approve the agreed-upon settlement pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015). The parties have agreed to a negotiated settlement agreement ("the Agreement") after extensive settlement during a settlement conference held on December 2, 2020 before Magistrate Judge Gorenstein. Countersigned copies of the Agreement are attached hereto as Exhibits A and B.[1]

　　　Plaintiffs were each employed by Defendants at Defendants' Manhattan restaurant until about July 7, 2019. (The Plaintiffs began their respective times of employment at different points between the years 2013 and 2016.) Plaintiffs worked as delivery workers but alleged also having worked a significant amount of times performing non-tipped duties. On September 20, 2019, Plaintiffs commenced this suit against the Defendant LLC and the individual Defendant, alleging violations of the minimum wage provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA") and the New York Labor Law §§ 190 et seq. and 650 et seq. (the "NYLL"). Plaintiffs further alleged violation of the anti-kickback provisions of the FLSA and NYLL in that Defendants required Plaintiffs to incur, without reimbursement, expenses related to the use and maintenance of bicycles for deliveries.

　　　**I.　　The Proposed Settlement is Fair and Reasonable**

　　　Under the Agreement, Defendants will pay $8,000.00, on or before February 2, 2021, to settle all claims.

　　　Upon the commencement of this action, Defendants failed to timely file an Answer or otherwise move with respect to the Complaint. In early February 2020, upon Plaintiffs' request, Certificates of Default were entered against each of the Defendants. ECF Docs. Nos. 22-23. On

---

[1] Three of the Plaintiffs have executed the settlement agreement to date. It is anticipated that the remaining Plaintiff, Plaintiff Penate, will execute the agreement when counsel is able to contact him. (Our firm has attempted to contact such counsel to secure his execution of the agreement, but, to date, without success.)

January 3, 2021
Page 2
Hon. Valerie E. Caproni, U.S.D.J.

March 2 2020, Plaintiffs filed a request for an Order to Show Cause for Default Judgment against Defendants. ECF Docs. Nos. 25-28. On March 3, 2020, the Court signed the Order to Show Cause and set a return date of April 3, 2020. ECF Doc. No. 29. The Court later adjourned the return date to April 17 in light of the ongoing pandemic. ECF Doc. No. 34. The Court subsequently adjourned the return date to June 19 and later to June 26. ECF Docs. Nos. 35, 37. On June 24, the Court, upon learning that the Defendant LLC had filed for bankruptcy, adjourned the scheduled June 26 hearing. ECF Doc. No. 39. Plaintiffs then moved to have the action re-opened with respect to the individual Defendant inasmuch as only the Defendant LLC, not the individual Defendant, had filed for bankruptcy. ECF Doc. No. 40. The Court granted the motion, but ordered Plaintiffs to refile the request for Order to Show Cause against the individual defendant only. ECF Docs. Nos. 41, 43. On September 10, the Court signed Plaintiffs' refiled Order to Show Cause and set a return date of October 16, 2020. ECF Doc. No. 56. The individual Defendant did not file a response to the Order to Show Cause, but he appeared pro se for the telephonic conference pertaining to the Order to Show Cause on October 16.

On October 16, the Court stayed Defendants' time to file an Answer and referred this matter to Magistrate Judge Gorenstein for a settlement conference. ECF Doc. No. 60. On November 20, Plaintiffs notified the Court that the bankruptcy matter of the Defendant LLC remained pending, but that the trustee had filed a Report of Final Distribution, suggesting that the bankruptcy action was likely drawing to a close. ECF Doc. No. 63. As mentioned above, the parties held a settlement conference before Magistrate Judge Gorenstein on December 2 and thereupon agreed to settle this matter for a total of $8,000.00.

Under *Lynn's Food*, a court may approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

Defendants' ability to satisfy a judgment or settlement was a paramount consideration in the settlement negotiations. The subject restaurant, owned and operated by the Defendant LLC, closed in or about October 2019. The individual Defendant, whose entire working career has been in the restaurant industry, has been unemployed since then. It is common knowledge that the restaurant industry in New York City has been devastated by the ongoing COVID-19 pandemic, so the individual Defendant's earning potential in the near future is highly doubtful. As mentioned, the Defendant LLC has filed for bankruptcy.

In advance of the December 2, 2020 settlement conference, the individual Defendant produced putative time and pay records which purported to show that Defendants, claiming a tip credit, fully paid Plaintiffs the applicable minimum wage for all hours worked. Plaintiffs acknowledged that the records appeared to accurately record the amounts of hours that they worked and the amounts of money that they were paid. However, Plaintiffs claimed that until sometime in

January 3, 2021
Page 3
Hon. Valerie E. Caproni, U.S.D.J.

2017, they were required to spend a considerable amount of their worktime engged in non-tipped duties (such that Defendants were not entitled to claim a tip credit for such dates). This resulted in a controversy of about $50.00 per week per Plaintiff (Plaintiffs typically worked about 30-35 hours per week, and Defendants claimed a $1.50 tip credit per hour) for each week, resulting in a shortfall of about $2,500 per year. Two of the Plaintiffs began working for Defendants in 2015, resulting in a shortfall of about $5,000 for such Plaintiffs, one of the Plaintiffs (Plaintiff Penate) began working for Defendants in 2016, resulting in shortfall of about $2,500.00, and one of the Plaintiffs (Plaintiff Maceda) began working for Defendants in 2013, resulting in a shortfall of about $10,000.00. Under the FLSA and/or NYLL, Plaintiffs would each be entitled to also recover as liquidated damages an amount equal to the shortfall in minimum wage. Under the settlement agreement, each Plaintiff will receive $1,4000.00. In light of Defendants' compromised financial situation and the consequent remoteness of the prospect of Plaintiffs' fully recovering on their claims, Plaintiffs submit that the agreement should be approved, notwithstanding that they will recover under the settlement agreement only a fraction of their respective claims.

At the settlement conference, Plaintiffs were represented by counsel, while the individual Defendant was not. (Subsequent to the settlement conference, the New York Legal Assistance Group (NYLAG) was retained to represent the individual Defendant with respect to the finalization of the settlement agreement.) This factor particularly strongly suggests that the settlement agreement is not a product of Defendants' overreach.

Considering the risks in this case outlined above, Plaintiffs believe that this settlement is fair and should be approved. *See Meigel v. Flowers of the World, NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.").

### II.     Plaintiffs' Attorneys' Fees are Fair and Reasonable

Under the settlement agreement, Plaintiffs' counsel will receive $1,200.00 from the settlement fund as attorneys' fees and costs. This is a considerable reduction in fees from the provisions of Plaintiffs' retainer agreements, which provide that forty percent of Plaintiffs' recovery will be retained by the firm. The lodestar amount is well over seven times the amount that Plaintiffs' counsel will receive under the settlement agreement.[2]

The amount provided to Plaintiffs' counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit. *See Castaneda v. My Belly's Playlist LLC,* No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the Plaintiffs' attorneys a contingency fee of one-third to account for risks in litigation); *see also*

---

[2] By the time of the September 10, 202 resubmission of the Proposed Order to Show Cause, Plaintiffs' counsel had billed $9,578.00 in this matter See ECF Doc. No. 54-2. Since that time, the undersigned counsel has expended additional time appearing at the October 16, 2020 conference, preparing for and appearing at the December 2, 2020 settlement conference, and preparing this submission.

January 3, 2021
Page 4
Hon. Valerie E. Caproni, U.S.D.J.

*Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). In light of the nature of the issues herein, and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiffs' requested award is reasonable. *See Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. at 60; *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).

Below is a brief biography of individuals who performed billed work on behalf of Plaintiffs in this matter, including the effective billable rate which the parties' request that the Court apply should the Court undertake a "lodestar analysis of the fairness of such fees (see, e.g,., Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany, 493 F. 3d 110 (2d Cir. 2007):

 i. Michael Faillace, Esq. ("MF"), the Managing Member of Michael Faillace & Associates, P.C., has been in practice since 1983. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). He taught employment antidiscrimination law as an Adjunct Professor at Fordham University School of Law beginning in 1992 and at Seton Hall University Law School from 1995 to 1998, and he is a nationally-renowned speaker and writer on employment law. He is also the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations. His work is billed at the rate of $450 per hour, his standard billing rate for matters paid on an hourly basis. Courts have routinely held that hourly fees of $450, or even $500, for counsel with Mr. Faillace's level of experience (37 years) and expertise are reasonable. See, e.g., Manley v. Midan Rest. Inc., No. 1:14-cv-1369 (S.D.N.Y. March 27, 2017), Doc. No. 42 at *32, 35-37 (fees of $500 per hour for FLSA litigator with 34 years of experience).

 ii. Yolanda Rivero ("YR") was an associate at Michael Faillace & Associates, P.C. She graduated from Albany Law School in 1996. She practiced as an associate with Michael Faillace & Associates, P.C. from January 2008 until April 2013, and from April 2019 to January 2020, cultivating a background in labor and employment law, with a focus on FLSA litigation. Between her respective stints at this firm, Ms. Rivero practiced real estate law for about six years. Ms. Rivero's work was billed at her regular rate of $350 per hour. This rate compares favorably with rates that courts have approved for associates of comparable experience levels. See, e.g., Manley, supra, Doc. No. 42, at *33, 37.

 iii. I, Jordan Gottheim ("JG"), graduated from Fordham University School of Law in 2016. I have cultivated an expertise in labor and employment law through internships in my law school's clinical educational department and LexisNexis's Lexis Practice Advisor Labor and Employment Law module, and through wage and hour associate experience at Heng Wang & Associates, P.C. and, since January 2020, at Michael Faillace & Associates, P.C. My work is billed at a rate of $350 per hour.

January 3, 2021
Page 5
Hon. Valerie E. Caproni, U.S.D.J.

      iv.      Jasmine Hernandez ("PL") is a paralegal at Michael Faillace & Associates, P.C. She graduated from City University of New York Hunter College in May 2018 with a dual Bachelor of Arts in Anthropology and Political Science and joined the firm of Michael Faillace & Associates in April 2019. Ms. Hernandez's work is billed at a rate of $125 per hour, well within a range of rates for paralegal work that courts have routinely approved. See, e.g., Manley, supra, Doc. No. 42, at *37; Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 29 (S.D.N.Y. 2015).

Should Your Honor have any questions or concerns regarding this settlement, the parties are happy to address them. The parties thank the Court for its attention to this matter.

                Respectfully submitted,

                /s/ Jordan Gottheim
                Jordan Gottheim
                MICHAEL FAILLACE & ASSOCIATES, P.C.
                Attorneys for the Plaintiff

Enclosures